UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| EDWARD ZIEMER,<br>    Plaintiff,<br><br>  vs.<br><br>VANDERBURGH COUNTY SHERIFF,<br>VANDERBURGH COUNTY, INDIANA,<br>and CORRECTIONS OFFICER JEFF<br>HENDERSON,<br>    Defendants. | 3:10-cv-125-RLY-WGH |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants, Vanderburgh County Sheriff, Vanderburgh County, Indiana, and Corrections Officer Jeff Henderson ("Officer Henderson") (collectively "Defendants"), move for summary judgment on Plaintiff Edward Ziemer's ("Plaintiff") claim of gross negligence. For the reasons set forth below, Defendants' Motion is **DENIED**.

**I.     Factual Background**

The recitation of the relevant facts are presented in the light most favorable to the Plaintiff as the nonmoving party, and all factual disputes are resolved in his favor.

Plaintiff and Leroy Johnson ("Johnson") were both inmates of the Vanderburgh County Detention Center in August 2008. It is customary for inmates in that facility to put any other inmate's laundry found in the washing machine into the dryer. (Deposition of Edward Ziemer ("Plaintiff Dep.") at 9; Deposition of Jeff Henderson ("Henderson

1

Dep.") at 5). On August 12, 2008, Johnson became angry with Plaintiff when Plaintiff failed to put his t-shirt from the washing machine into the dryer. (Plaintiff Dep. at 9; Henderson Dep. at 4-5). Johnson, a heavy set man, came to Plaintiff's cell the following morning and told Plaintiff that if he came out for recreation that day, he had "better bring a pen because he was going to kill [him]." (Plaintiff Dep. at 10-11). Later that day, during Johnson's period of recreation, he came by Plaintiff's cell and threatened him again. (*Id*. at 11). Several inmates heard Johnson's threats, including Randy Clark ("Clark"). (*Id*. at 12).

Officer Henderson was the officer in charge on August 13, 2008. His duty station was located in the middle of the cell block, facing the stairs that led to the visitation room. (*See* Plaintiff's Ex. 6). Officer Henderson contacted Plaintiff through the intercom to ask him if he would like to meet with some interns from the University of Southern Indiana ("USI") for a clinical survey on inmates. (Plaintiff Dep. at 12, 34). Plaintiff responded that he would like to go. (*Id*. at 13). Plaintiff then asked Clark, who was located outside of Plaintiff's cell, to tell Officer Henderson that he and Johnson "were going to have problems," and to place Johnson on "lock down" while he (Plaintiff) was out of his cell. (*Id*. at 12-13, 32). After Clark relayed Plaintiff's message to Officer Henderson, Officer Henderson contacted Plaintiff through the intercom and asked if there was a problem between Plaintiff and Johnson. (*Id*. at 13). Plaintiff informed Officer Henderson that yes, there was a problem, and that they were going to fight. (*Id*.). Officer Henderson informed Plaintiff that he would put Johnson on lock down. (*Id*.).

2

After Plaintiff's visitation time was over, Plaintiff noticed that Johnson was out of his cell, near Officer Henderson's duty station. (*Id*. at 14). The videotape of the incident shows Johnson pacing back and forth behind Officer Henderson's station, apparently waiting for Plaintiff to walk by. (*See* Plaintiff's Ex. 6) Plaintiff made eye contact with Officer Henderson and took his time coming down the stairs, hoping that Officer Henderson would notice him and lock Johnson back up in his cell. (*Id*. at 14-15). Plaintiff then walked by Officer Henderson's station, said a few words (but it is not known what was said), and toward his cell. (*Id*. at 15; Plaintiff's Ex. 6). Right before Plaintiff entered his cell, Plaintiff felt Johnson's presence and heard Johnson threaten him. (*Id*. at 43). Plaintiff feared for his life, so he turned around and punched Johnson. (*Id*. at 15, 43). A short altercation ensued, with Johnson landing on top of Plaintiff, punching him. (*Id*. at 43). The next thing Plaintiff knew, Johnson "bit a chunk of [his] ear off." (*Id*.). Plaintiff estimated that the time between his request that Johnson be on lock down and the altercation was approximately thirty (30) minutes. (*Id*. at 30).

## II.     Summary Judgment Standard

Summary judgment is appropriate if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When a summary judgment motion is submitted and supported by evidence as provided in Rule 56(c), the nonmoving party may not rest on mere allegations or denials in its pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)

(internal quotation marks and citation omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

## III. Discussion

The only claim remaining in this lawsuit is Count III, Plaintiff's claim for gross negligence against the Defendants. Under the Indiana Tort Claims Act, both contributory negligence and incurred risk operate as a complete bar to recovery against government actors. *Funston v. School of Munster*, 849 N.E.2d 595, 598 (Ind. 2006). Defendants' Motion is based on these two defenses.

### A. Incurred Risk

Under Indiana law, the affirmative defense of incurred risk "entails a subjective analysis into the plaintiff's actual knowledge and voluntary acceptance of the risk and involves a mental state of venturousness on the part of the actor." *City of Alexandria v. Allen*, 552 N.E.2d 488, 497 (Ind. Ct. App. 1990) (citing *Richardson v. Marrell's, Inc.*, 539 N.E.2d 485, 487 (Ind. App. 1989)). Exposure to a risk is not voluntary, even if the risk is known and appreciated, "where there is no reasonable opportunity to escape from it." *Get-N-Go, Inc. v. Markins*, 544 N.E.2d 484, 487 (Ind. 1989) (citing *Ridgway v. Yenny*, 57 N.E.2d 581, 583 (Ind. 1944)). *See also McGill v. Duckworth*, 944 F.2d 344352 (7th Cir. 1991) ("The Supreme Court of Indiana held that someone whose only way out of a pickle created by the defendants is to continue on through the hazard has no reasonable opportunity to escape from the dangerous condition and therefore does not incur the

4

risk.""). Because the defense of incurred risk involves the plaintiff's knowledge and intent, it is generally a question of fact for a jury. *Mauller v. Columbus*, 552 N.E.2d 500, 502 (Ind. Ct. App. 1990). Incurred risk may be found as a matter of law, however, "'*only if the evidence is without conflict and the sole inference to be drawn is that the plaintiff (a) had actual knowledge of the specific risk, and (b) understood and appreciated the risk.*'" *Id*. (quoting *Stainko v. Tri-State Coach Lines, Inc.*, 508 N.E.2d 1362, 1264 (Ind. Ct. App. 1987)). Thus, the court may grant summary judgment in favor of the Defendants only if the evidence, viewed in the light most favorable to Plaintiff, supports the sole inference that Plaintiff had actual knowledge of, and voluntarily intended to expose himself to, the risk of a physical attack by Johnson.

In the present case, Plaintiff was aware of the risk of being in Johnson's presence. This is evidenced by the fact that Johnson threatened Plaintiff's life on several occasions the day before and the day of the altercation. Plaintiff therefore made Officer Henderson aware of the situation, and asked Officer Henderson to place Johnson on lock down while he was out of his cell and in the visitation room. Officer Henderson complied with his request. For reasons unknown, Johnson was out of his cell by the time Plaintiff's appointment in the visitation room was over. Defendants contend that Plaintiff could have avoided Johnson by simply asking Officer Henderson, as he passed by his duty station, to lock Johnson in his cell. Thus, according to Defendants, the court should find, as a matter of law, that Plaintiff incurred the risk of Johnson's physical attack.

In support of Defendants' argument, they cite *McGill v. Duckworth*, *supra*. In that
5

case, the plaintiff was threatened and later raped in a shower by a fellow prison inmate. 944 F.2d at 344. The Seventh Circuit rejected the plaintiff's negligence claim against the prison officers, finding that the plaintiff incurred the risk of the attack by failing to inform the prison officers of the specific threat to his safety, and by failing to take advantage of other available alternatives, such as taking his shower at a different time. *Id*. at 353. This case differs from *McGill* in that Plaintiff made Officer Henderson aware of the danger posed by Johnson and specifically asked Officer Henderson to lock Johnson in his cell during his time in the visitation room. Plaintiff testified that, when his appointment was concluded and he saw Johnson in the area near Officer Henderson's duty station, he "walked around for a minute" and made eye contact with Officer Henderson, hoping that Officer Henderson would understand to lock Johnson in his cell. (Plaintiff Dep. at 14-15). When that did not work, he walked down the stairs and to his cell, where the fight ensued. A reasonable juror could find that Plaintiff did not have other reasonable alternatives available to him to avoid harm by Johnson. Indeed, a reasonable juror could conclude that Plaintiff would not have left his cell had he known that Johnson would be free to roam the cell block.

One other issue needs to be addressed. Defendants take issue with the fact that the Plaintiff threw the first punch. Plaintiff testified that Johnson was right behind him as he neared his cell, and that he feared for his life. Moreover, based on a review of the videotape of the incident, Johnson was a much larger man than Plaintiff. Thus, a reasonable juror could find that Plaintiff turned around and punched Johnson not to start a

6

fight, but in self-defense. Accordingly, Defendants' Motion for Summary Judgment based on Defendants' affirmative defense of incurred risk is therefore **DENIED**.

   B.   **Contributory Negligence**

Under Indiana law, a plaintiff may not recover if guilty of any negligence, no matter how slight, that proximately contributes to his injuries. *Funston*, 849 N.E.2d 595, 598, n.2 (Ind. 2006). Like incurred risk, contributory negligence is generally a question of fact and, therefore, not an appropriate issue to resolve on summary judgment. *Id*. at 599. A court may rule as a matter of law with respect to the issue, however, if "the facts are undisputed and only a single inference can reasonably be drawn therefrom." *Id*.

Defendants argue that Plaintiff failed to take reasonable steps to avoid danger, such as apologizing to Johnson, taking measures to avoid Johnson, or asking Officer Henderson to lock Johnson down as Plaintiff passed his duty station on his way to his cell. Johnson testified, however, that he would not have accepted an apology from Plaintiff. (*See* Johnson Dep. at 26) ("Apologizing was out the window."). Moreover, Plaintiff did take measures to avoid Johnson by asking Officer Henderson to lock Johnson in his cell while he was in the visitation room and out of the safety of his cell. Whether he should have done more, as suggested by the Defendants, is a question best left for a jury. Defendants' Motion for Summary Judgment based on Defendants' affirmative defense of contributory negligence is therefore **DENIED**.

**IV.   Conclusion**

For the reasons set forth above, genuine issues of material fact exist precluding

7

Defendants' Motion for Summary Judgment on the affirmative defenses of incurred risk and contributory negligence. Defendants' Motion for Summary Judgment (Docket # 49) is therefore **DENIED**.

**SO ORDERED** this  22nd   day of December 2011.

_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Robert R. Faulkner
rrfaulk@evansville.net

John Andrew Goodridge
John Andrew Goodridge Law Office
jagoodridge@att.net